**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

CAROL J. ADERHOLT,          )
                                   )
           Plaintiff,        )
                                   )     Civil Action
       vs.                 )     No. 09-0708-CV-W-JCE
                                   )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,    )
                                   )
          Defendant.     )

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for

disability insurance benefits and supplemental security income benefits under Title II and XVI of

the Act, 42 U.S.C. §§ 401, 1381 et seq.  Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this

Court may review the final decisions of the Secretary.  For the following reasons, the Secretary's

decision will be affirmed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial

evidence in the record as a whole to support the Secretary's decision.  42 U.S.C. § 405(g); e.g.,

Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991).  Substantial evidence is "'such

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson

v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197,

229 (1938)).  Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff, who was 43 years old at the time of the hearing before the ALJ, has a high school education and certification as a medical assistant.   In her disability report, she claimed disability because of back pain, memory problems and confusion, and migraine headaches.  She stopped working on January 17, 2006.

At the hearing before the ALJ, plaintiff testified that she had been diagnosed with bipolar disorder and post traumatic stress disorder ["PTSD"], which prevents her from working.  She is 75% manic and 25% depressive in terms of the bipolar disorder.  When she is manic, she has attacks where she cannot catch her breath, her chest hurts, her throat closes, and she feels like she is going to die. This happens once or twice a week, and sometimes lasts an hour.  Stress causes these attacks, and sometimes food or certain perfumes also trigger an attack.  When she is depressed, she isolates herself, does not want to talk to anyone, and just stays in and watches television.  Plaintiff testified that she has problems with her memory and problems with her attention span.  She thinks her PTSD stems from losing her husband, having gone through two divorces, and having been in a car accident.  She gets depressed and sad.  Plaintiff also has back problems, including a pinched sciatic nerve and pain in her low back.  It keeps her from bending, stooping, and reaching up and down.   She thinks the back problem was caused by the car accident and another incident when she was rolling up hay.  She also has headaches.  She had an MRI in about 2006.  She takes a number of medications, and they make her kind of sleepy, so she takes at least one nap during the day.  Sometimes she takes more than one, and she sleeps for

about an hour to an hour and a half. Both Paxil and Hydrazine make her drowsy. It does take her about an hour to two hours to go to sleep at night, however, because her mind races. She takes medication for sleeping, but wakes up two to three times a night. Plaintiff lives with her brother and thirteen-year-old daughter. Her brother does most of the cooking, and her daughter helps her with the cleaning, doing all of the heavy work. Plaintiff only bathes two or three times a week, as it bothers her back to get in and out of the tub. She usually watches television during the day. She leaves the house to go to church, the doctor, and to the grocery store. She has no social activities outside of church. Her mother goes to church with her. She can lift a gallon of milk, but doesn't think she could lift anything over about 18 pounds.

Plaintiff testified that she last worked packing frozen chickens. That was a full-time job. She had to stand to perform the work. She left the job because of bending and the stress. She was also getting very slow. Plaintiff stated that she is prescribed Tramadol and some muscle relaxers for her back. She has not had surgery, nor has it been recommended. She has had approximately three epidural shots. In addition to her back, she testified that she has neck pain and headaches. She hurt her neck and back in the car accident. Mentally, plaintiff testified that she was diagnosed with bipolar II anxiety disorder by a nurse practitioner. Her manic attacks last about an hour; they started getting stronger about 2007. She feels like she is going to pass out and hyperventilates when these occur. She made one visit to the emergency room in 2008 because of such an attack. It happens quite often that she does not get out of bed because of depression; this happens two to three times a week. Sometimes she stays in bed all day. In terms of the PTSD, she still has flashbacks from the motor vehicle accident. She also has recurring dreams of her husband dying. She does not have suicidal ideation. She was hearing voices and

4

hallucinating from other medications, but that has cleared up on different medications. Plaintiff stated that the panic attacks are different from the manic attacks, and the anxiety or panic attacks can be brought on through smells. It was her testimony that she has seen a mental health therapist about once a month, and had about ten visits at the time of the hearing.

The ALJ found that plaintiff has not engaged in substantial work activity since the alleged onset date, January 19, 2006. He found that the medical evidence established that plaintiff has severe impairments in the form of low back pain with sacroiliac joint dysfunction and depression. The ALJ found that plaintiff was not fully credible. He determined that she retained the Residual Functional Capacity ["RFC"] to perform sedentary work, which must be "simple, repetitive and routine and as stress free as possible and at a skill level no higher than an SVP of 2." [Tr. 18]. He further found that she could only occasionally bend, crawl, kneel, crouch or squat; not be exposed to perfumes, colognes, tobacco smoke or strong food smells; have limited contact with the public; and not perform repetitive lifting or reaching. Based on the testimony of a vocational expert, the ALJ found that plaintiff could not perform her past relevant work as a nurse aide, packer, or mail clerk, but that she could perform less than a full range of sedentary work. The vocational expert, based on the ALJ's hypothetical, testified that such an individual could perform the requirements of representative occupations such as a surveillance system monitor, document preparer, and order clerk food and beverage. It was the ALJ's finding that plaintiff is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because he erred in adopting the vocational expert's testimony that jobs exist that she could perform within the RFC formulated by the ALJ. Specifically, she asserts that the expert's testimony was in conflict with

the Dictionary of Occupational Titles ["DOT"], and there was no explanation to address the conflict. She also contends that the ALJ failed to conduct a proper credibility analysis by failing to consider the negative side effects of her medication and observations by third parties. She asserts that he failed to consider that her medicine caused fatigue, nausea, drowsiness and dizziness, and that he also did not consider statements made by persons regarding their observations about her mental health and her ability to function.

According to the vocational expert, plaintiff had past relevant work as a nurse's aide at the medium exertional level, semiskilled; packer, medium exertional level; and mail clerk, at the light exertional level, unskilled. Based on the limitations found credible by the ALJ, the vocational expert testified that the hypothetical individual could not perform her past relevant work. The expert stated that the greatest limitation would be the repetitive lifting restriction. It was her opinion that there were jobs that the individual could perform, including surveillance system monitor, document preparer, or order clerk in food and beverage. The ALJ inquired of the vocational expert whether her testimony conflicted in any way with any provision of the DOT. She responded that it did not, "but some of the hypothetical issues were based on my opinion and experience in that profession." [Tr. 59].

Plaintiff contends that the ALJ erred in adopting the vocational expert's testimony because the jobs identified by the vocational expert to be within plaintiff's RFC are not within the RFC according to the DOT, and the ALJ never addressed this conflict. Specifically, she contends that she could not perform the job of surveillance-system monitor because she needs to have, as much as possible, a stress-free environment with limited contact with the public. It is her position that, according to the DOT, a surveillance-system monitor must be able to detect crimes or

6

disturbances and speak before an audience, which she cannot do. She contends that she cannot be

a document preparer because the job requires frequent reaching, according to the DOT. Finally,

regarding the position of order clerk, food and beverage, she claims she cannot perform this job

because she is precluded by the RFC from being exposed to strong food smells and must have

limited contact with the public. Plaintiff contends that the ALJ erred by not resolving the conflict

between inconsistencies of the vocational expert's characterization of a job and those found in the

DOT.

Turning first to the ALJ's credibility determination, the ALJ found that plaintiff's

subjective complaints were not entirely credible. The law is clear that "[t]he credibility of a

claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Homstrom v.

Massanari, 270 F.3d 715, 721 (8th Cir. 2001). While an ALJ who discredits a claimant's

subjective complaints must make an express credibility determination explaining the reasons for

doing so, Singh v. Apfel, 222 F3d 448, 452 (8th Cir. 2000), the law does not require that the ALJ

explicitly discuss each factor. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010). Rather, it

is sufficient if the ALJ acknowledges and considers the factors before discounting subjective

complaints. Id. at 932. The ALJ's credibility determination is entitled to deference if it was based

on several valid reasons. Id.

A full review of the record leads the Court to the conclusion that there is substantial

evidence to support the ALJ's decision to only partially credit plaintiff's testimony. Initially,

there is not medical evidence in the record to support her allegations that her back condition is

wholly disabling. The record indicates that other than several epidural injections, treatment for

her back has been conservative. Diagnostic tests have indicated that her discs are of normal

height, and she has no herniation, protrusion, stenosis, or significant abnormality. Further, in finding that plaintiff could only perform a limited range of sedentary work, the ALJ clearly gave credence to some of her testimony. Plaintiff also testified regarding daily activities that are not entirely consistent with the extent of her subjective complaints. Additionally, it is clear from a review of the testimony and medical records that the ALJ did not err in disregarding serious side effects from medication, given that plaintiff had not reported such to her physicians, nor did she testify that any medication caused her serious problems. In fact, according to her testimony at the hearing before the ALJ, she stated only that some of her medication made her drowsy or sleepy. A review of the record also indicates that plaintiff does not suffer from depression that would completely preclude her from working; further, the ALJ took into consideration the complaints about depression that he found credible in assessing her working ability. Regarding the fact that the ALJ did not refer to the written statements of plaintiff's brother, sister and social worker, the Court finds that this was not prejudicial error, but rather, at most, as defendant contends, "an arguable deficiency in opinion-writing technique." [Defendant's Brief, at 12 (quoting Robinson v. Sullivan, 956 F.2d 836, 841 8th Cir. 1992))]. Those statements either indicated fewer limitations than plaintiff alleged, in that both her brother and sister indicated that she got her daughter off to school, took care of her own personal needs, helped fix meals, and performed routine household chores, or reflected her own statements regarding her limitations that she had made to the social worker. After careful review, the Court finds that the ALJ's failure to acknowledge these statements in his ruling would not effect the outcome of this case. The law does not require that the ALJ delineate every factor in his credibility determination, and the Court finds that, in this case, there is substantial evidence in the record as a whole to support the ALJ's credibility

determination.  The ALJ sufficiently acknowledged and considered the <u>Polaski</u> factors before discounting some of plaintiff's subjective complaints. Given that the credibility of a claimant's testimony is primarily for the ALJ to decide, the Court finds that there is a sufficient basis to support the ALJ's credibility determination, which was based on the ALJ's thorough review of the objective medical evidence, the opinions and observations of physicians of record, and plaintiff's own testimony.

Regarding the vocational expert, in determining whether a claimant can perform any work in the national economy, an ALJ may rely on the descriptions of jobs provided in the DOT or a description of jobs by a vocational expert. 20 C.F.R. § 404.1566.  "If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist." 20 C.F.R. § 404.1566(e).  Social Security Ruling ("SSR") 00-4p requires the ALJ to identify and obtain a reasonable explanation for any conflict between occupational evidence provided by a vocational expert and information in the DOT.  "When there is an apparent unresolved conflict between the [vocational expert] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p. The ruling further provides that, at the hearings level, "as part of the adjudicator's duty to fully develop the record, the adjudicator  will inquire, on the record, as to whether or not there is such consistency.  Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by

determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." Id.

In this case, the ALJ consulted a vocational rehabilitation counselor, Marian Lumpy. The ALJ presented a hypothetical to Ms. Lumpy, which included a hypothetical individual who could perform a full range of sedentary work, with a restriction of "simple, repetitive and routine, as stress free as possible." [Tr. 54]. Additionally, the individual could not be in an environment "where she will be exposed to a lot of perfumes, tobacco smoke, colognes, things of that nature. Because, because that especially spicy foods like I like, because that triggers her manic attacks." [Tr. 54-55]. "And, and, and to detail that, that will cause her to have limited contact with the public." [Tr. 55]. The ALJ then stated that the individual "has a problem lifting. So we could have no repetitive lifting, or reaching in this particular job." [Tr. 55]. In response to that restriction, the vocational expert later inquired as follows: "When you said no repetitive reaching. Do you mean straight out also. I mean away from the body, like it's–." [Tr. 55]. The ALJ responded: "Above head and straight out." [Tr. 55]. The vocational expert then responded, "[w]ell, in other words, the hypothetical person could not reach out to do cable work." [Tr. 55]. The ALJ stated: "Not repetitively." [Tr. 55]. After advising the ALJ that the individual could not return to her past work because of the sedentary exertional level, the vocational expert testified that "the greatest limitation is the repetitive." [Tr. 56]. She then advised that the jobs of surveillance system monitor, and document preparer, which is microfilming and scanning, would be appropriate. The ALJ then asked if there were any other jobs that might be available. The vocational expert again mentioned, "[n]ot repetitive reaching," to which the ALJ responded, "[n]ow, let, let me clarify that since you keep, keep mumbling on that. What I'm talking about is

10

not that she can't reach over her head, but she can't do it over and over again." [Tr. 57]. Then the

vocational expert responded that the other job she was thinking about would be order clerk in

food and beverage, "[w]hich is basically taking phone calls and writing orders, food orders, you

know, for motels and hotels." [Tr. 57]. The ALJ later inquired regarding the first hypothetical,

asking whether the vocational expert took into consideration every limitation that was placed on

the sedentary exertional level, and whether it was her professional opinion that the hypothetical

individual could perform these three jobs on a sustained basis. The vocational expert replied

affirmatively. The ALJ then asked her if her testimony in any way conflicted with any provision

of the DOT. The vocational expert responded that, "It does not conflict, Your Honor, but some of

the hypothetical issues were based on my opinion and experience in that profession." [Tr. 59].

Plaintiff argues that she could not be a surveillance system monitor because she could not

speak before an audience, could not be a document preparer because she cannot perform

repetitive reaching, and could not be an order clerk food and beverage because of a problem with

food smells. It is apparent, however, that the DOT description of the job includes the maximum

requirements the job might entail. The DOT definitions "are simply generic job descriptions that

offer the approximate maximum requirements for each position, rather than their range." Wheeler

v. Apfel, 224 F.3d 891, 897 (8th Cir.2000) (quoting Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir.

1997)). "[N]ot all of the jobs in every category have requirements identical to or as rigorous as

those listed in the [Dictionary of Occupational Titles]." Wheeler, 224 F.3d at 897. Therefore, the

Eighth Circuit has routinely held that a plaintiff's reliance on the DOT as a definitive authority on

job requirements is often misplaced. E.g., Hillier v. Social Sec. Admin., 486 F.3d 359, 366 -367

(8th Cir. 2007); Page v. Astrue, 484 F.3d 1040, 1045 (8th Cir. 2007).

While plaintiff argues that the ALJ did not resolve an apparent conflict, a careful review of

the testimony indicates that several times during the course of the inquiry of the vocational expert,

questions were asked regarding the nature of the reaching limitation.  It is apparent that the

vocational expert  understood the nature of that restriction: i.e., that the hypothetical individual

could not perform repetitive overhead reaching such as that required by a cable worker.  This is not

the type of reaching that would be required of a document preparer, which specifically is identified

as a job of scanning microfilm. By the same token, there is nothing to suggest that the job of

surveillance system monitor  requires that an individual speak before an audience.   Regarding the

job of taking food and beverages orders at a motel or hotel, there is nothing in the record to indicate

that there was a conflict between the vocational expert's opinion and the DOT.  It is clear that the

DOT addresses maximum job requirements, and not a job range.  Therefore, the Court finds that

any conflict was resolved during the dialogue between the ALJ and the vocational expert. The ALJ

did not err in failing to obtain an explanation from the vocational expert as to any conflict between

her testimony about jobs and the DOT.

In this case, the Court finds that there is substantial evidence to support the ALJ's decision.

While the questioning of the vocational expert by the ALJ to resolve any conflict may not have

been the most polished, it was adequate.  A full review of the testimony satisfies the Court that the

vocational expert took into consideration the limitation of a low stress job, away from the public, in

rendering her opinion that the hypothetical individual could perform the jobs delineated.  Further, it

is apparent that the issue of the matter of repetitive  reaching was addressed and clarified.

Regarding the job of order clerk food and beverage, the DOT does not include a restriction

regarding smells in its description of that job.  Therefore, the Court finds that the ALJ was justified

in relying on the vocational expert's testimony in finding that plaintiff is able to perform a limited range of sedentary jobs in the national economy. See Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir.1991); Trenary v. Bowen, 898 F.2d 1361, 1365 (8th Cir.1990). The Court finds, accordingly, that the ALJ properly relied on the VE's response to the hypothetical. See Stormo v. Barnhart, 377 F.3d 801, 808-09 (8th Cir. 2004).

Based on the record before it, the Court finds that the ALJ's decision is supported by substantial evidence in the record. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:    8/24/10